The North Chicago City Railway Company

*v.*

John Gastka.

*Filed at Ottawa May 16, 1889.*

1. Master and servant — *respondeat superior — generally.* Where the relation of master and servant exists between a city railway company and a person whose act may be the cause of an injury to another, the company will not be liable, if the servant, in causing the injury, is not acting within the scope of his employment; but the master will be responsible, when the servant acts within the general scope of his employment, for acts done while engaged in his master's business, with a view to the furtherance of that business, by which injury is caused to another, whether negligently or wantonly committed.

2. Same — *ejecting passenger from street car — without due care on the part of the servant.* If a person is a trespasser upon a street railway car, or is unlawfully riding thereon without the payment of fare, and the conductor undertakes to remove the intruder, he must act in a prudent manner, and exercise due care for the safety of such person; and if he fails to do so, and in consequence thereof such person is injured, the railway company will be liable for the injury.

3. Continuance—*absence of witnesses.* Certain witnesses of a defendant, duly subpœnaed, failed to appear when he had finished his other evidence, and he asked time to procure the absent witnesses. The court refused to delay longer than fifteen minutes. On motion for a new trial, the defendant, by affidavit, showed these facts, and the materiality of the testimony of the witnesses, but failed to show that the absence of the witnesses was not by his consent: *Held,* that for this omission alone the defendant failed to make a proper showing.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding.

Mr. W. C. Goudy, for the appellant:

Even if a servant is engaged in the performance of his duty to his master, yet if he, personally and wholly for a purpose of his own, does an act not connected with the business of such master, and not intended by him to further the objects of such employment, the master is not liable for an injury thereby occasioned. Cooley on Torts, 535; Wharton on Negligence, sec. 168; *Tuller* v. *Voght,* 13 Ill. 277; *Oxford* v. *Peter,* 28 id. 434; *Porter* v. *Railroad Co.* 41 Iowa, 358; *McManus* v. *Cricket,* 1 East, 106; *Wright* v. *Wilcox,* 19 Wend. 343; *Howe* v. *Newmarch,* 12 Allen, 49; *Johnson* v. *Barber,* 5 Gilm. 425.

It has been held by courts of the highest respectability, that the willful and malicious throwing of a passenger from the car, by the conductor of a street car, is not an act done in execution of a duty of the conductor to his employer, and that the street car company is not liable therefor. *Isaacs* v. *Railroad Co.* 47 N. Y. 122; *Railroad Co.* v. *Donahue,* 70 Pa. St. 119; *McKeon* v. *Railroad Co.* 42 Mo. 79.

A newsboy selling newspapers on the street, and accustomed to board street cars, with the acquiescence of the servants of the company, for the purpose of supplying the passengers with papers, is not a passenger, and the company is not charged with the duty of looking after his safety, or of seeing that he does not run into danger, or of stopping the speed of the car

for him to leave, whether requested to do so or not. Thompson on Carriers of Passengers, 46; *Fleming* v. *Railroad Co.* 1 Abb. (N. C.) 433; *Blackmore* v. *Railroad Co.* 38 Upper Can. (2 B.) 172.

Whenever an injury has been caused by the conduct of a servant in the business of his master and within the scope of his employment, the master has been held liable, although such conduct may have been tortious. The question of liability does not depend entirely on the quality of the act, but rather upon the other question, whether it has been performed in the line of duty, and within the scope of the authority conferred by the master. *Seymour* v. *Greenwood*, 7 H. & N. 355; *Limpus* v. *Omnibus Co.* 1 H. & C. 526; *Goff* v. *Railway Co.* 3 E. & E. 672.

A new trial will be granted on the ground of surprise, when a material witness who has been subpœnaed withdraws, or absents himself, so that his testimony can not be taken. Hilliard on New Trials, (2d ed.) 536; *Tilden* v. *Gardner*, 25 Wend. 653; *Ruggles* v. *Hall*, 14 Johns. 112.

The non-attendance of a material witness, or the absence of a material piece of testimony, contrary to reasonable expectation, and satisfactorily accounted for, will induce the court to set aside the verdict and grant a new trial. 1 Gra. & Wat. on New Trials, 209; 3 Wait's Prac. 402; *Oakley* v. *Sears*, 7 Rob. 111; *Cotton* v. *State*, 4 Texas, 264.

Mr. JOHN GIBBONS, and Mr. FRANK H. GOIN, for the appellee.

Per CURIAM: This was an action of trespass on the case, to recover for personal injuries. The declaration contained three counts. The second count in the amended declaration sets up plaintiff's cause of action more fully than either of the other counts, and it is in substance as follows: "That on the 18th day of August, 1885, defendant was operating a city passenger railway in the city of Chicago, and was possessed of certain cars drawn by horses for the conveyance of passengers

upon said railway; that divers newsboys, for a long time prior to the happening of the grievances complained of, were accustomed to go upon said cars to sell newspapers to the passengers upon said cars, with the knowledge, consent and approbation of, and without the objection of, defendant, and plaintiff, as such newsboy, on the day last aforesaid, boarded a certain passenger car possessed by defendant, for the purpose of selling newspapers to the passengers who had taken passage on said car, as he lawfully might; that while plaintiff was lawfully upon said car, and in the exercise of due care, defendant, through its servants and agents, without notice to plaintiff to get off said car, and without any warning to plaintiff, then and there violently, negligently and unlawfully cast and threw plaintiff, with great force and violence, to the ground there, and certain horses of defendant, and a certain passenger railway car of defendant drawn by said horses, and moving in an opposite direction to which said first mentioned car was running, tramped upon and ran over the body and legs of plaintiff, and by reason of being then and there tramped upon and run over, divers bones of plaintiff's body were broken, and the legs of plaintiff were crushed, contused, mangled, lacerated and broken, and he became and was sick, sore, lame and disordered, and so remained from thence hitherto, during all which time plaintiff thereby suffered great pain, and was prevented from transacting his ordinary business." To the declaration the defendant pleaded the general issue, and on a trial before a jury the plaintiff recovered a judgment, which was affirmed in the Appellate Court.

It is insisted on behalf of the North Chicago City Railway Company, that it is not liable, for the reason that "the act of throwing the plaintiff from the car, was the violent, wanton and malicious personal act of Bullock, (the conductor,) and he, alone, is liable." Much of the argument has been devoted to establish this proposition, and quite a number of authorities have been cited to sustain the view of the defendant. We

do not think there is any difficulty in reference to the law upon this question. Where the relation of master and servant exists between the railway company and the person whose act may be the cause of an injury to another, the company will not be liable if the servant, in causing the injury, is not acting within the scope of his employment; but, on the other hand, the law is equally well settled that the master will be responsible, where the servant acts within the general scope of his employment, for acts done while engaged in his master's business with a view to the furtherance of that business, by which injury is caused to another, whether negligently or wantonly committed. *Chicago, Milwaukee and St. Paul Ry. Co.* v. *West,* 125 Ill. 321.

It was claimed on the trial of the cause in the trial court, by the defendant, that the conductor did not push the plaintiff off the car, but that plaintiff of his own accord jumped off the car and was thus injured, and so the conductor testified. But here the defendant seems to have changed his line of defense, claiming that the injury was the result of the wanton and malicious personal act of the conductor. In the view we take of the case, it will not be necessary to stop to inquire which theory of the defendant may be correct on the question of fact, or, indeed, whether either was sustained by the evidence. Under the rule laid down in the case cited, if the plaintiff was injured by the act of the conductor when acting under the general scope of his employment, the defendant will be liable. The conductor had charge of the car. One of his duties was to collect fares from persons who might enter the car. Now, while engaged in the discharge of this duty, in passing through the cars he came to the plaintiff, who a short time before had entered the car, and, as the evidence introduced on the part of plaintiff tended to prove, he pushed the plaintiff off the car. The testimony of the conductor of itself is enough to establish the fact that he was acting within the general scope of his employment when the plaintiff was put

off the car.   He testified: "I got to Chicago avenue, and there was an old gentleman got on.   We got near Superior street.   We started up again.   We got between the blocks. This boy jumped on the car.   I started to go around to collect fares, and in so doing I swung off the back platform, and shouted to the boy, "Look out there,' and he jumped off and the car coming north caught him.   The boy was about five feet from me, I guess, when he jumped from the car.   I was just swinging off from the rear platform."   Whether the plaintiff was a trespasser on the car, or was unlawfully riding on the car without the payment of fare, was a matter of no moment. If plaintiff had no right on the car, and the conductor, in the discharge of his duty as manager of the car, undertook to put him off, the law required him to act in a prudent manner, and exercise due care for the safety of the plaintiff, and if he failed to do so, and in consequence the plaintiff was injured, the defendant was liable.

The court gave, on behalf of the plaintiff, four instructions, and in the argument it is claimed that they are all erroneous. The instructions may contain technical inaccuracies, but in the main we regard them as correct.   They contain nothing calculated to mislead the jury.

All the instructions asked on behalf of the defendant, ten in number, were given as asked.   There is therefore no just ground for claiming that the jury were not fully instructed.

One other question remains to be considered.   Two witnesses who had been subpœnaed to attend and testify for the defendant, and who had been in attendance, failed to appear when the defendant had finished introducing his other evidence, and the defendant requested time to procure the witnesses.   The court delayed the cause some fifteen minutes, and then refused to wait longer for the witnesses.   On the motion for a new trial, an affidavit on behalf of defendant was read, showing the facts relied upon on this branch of the case. It may be that the evidence of the witnesses would have been

material; but it nowhere appears, from the showing of the defendant, that the absence of the witnesses was not by its consent, and upon this ground, alone, the defendant failed to make a proper showing.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*