## Kellyville Coal Co. v. James Hill.

1. CONTINUANCE—*Sufficiency of the Affidavit.*—In an affidavit for a continuance on the ground of an absent witness, it is not necessary to state that the witness was not absent by the consent or procurement of the party applying for the continuance.

2. SAME—*What Meets the Requirements of the Statute.*—An affidavit showing the absence of a material witness; the facts expected to be shown by him (which are material); due diligence on the part of the party applying, to procure his attendance; his inability to show so fully the same facts by any other person; that the absent witness resided in Vermilion county but was temporarily absent; that he had testified at a former trial and given important testimony, and that he could reasonably be expected to be produced or his deposition taken if the case was continued to a future time, is sufficient, under the requirements of the practice act, to entitle the applicant to a continuance.

Kellyville Coal Co. v. Hill.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Heard in this court at the November term, 1900. Reversed and remanded. Opinion filed February 28, 1901.

AFFIDAVITS READ ON THE MOTION FOR A CONTINUANCE.

G. M. McDowell, being sworn, says that he is one of the attorneys of the defendant.

That the defendant can not safely proceed with the trial of this case at the present term of the court owing to and on account of the absence of one Jacob Maggs, a material witness for the defendant. That the defendant expects to prove by Jacob Maggs that on the 6th day of December, 1898, the day of the injury complained of, Jacob Maggs was and had been prior thereto the mine examiner and duly authorized agent of the defendant to examine as provided by law that part of the mine of the defendant where the injury complained of occurred to the plaintiff. That at and prior to the time of the injury complained of, Jacob Maggs had a certificate of competency as mine examiner issued to him by the State Board of Examiners in the words and figures following :

\*       \*       \*       \*       \*       \*       \*

That Jacob Maggs, as mine examiner and duly authorized agent of the defendant, on the morning of the injury complained of and prior thereto, examined the mine, and that part of it where the injury complained of occurred, with a sounding rod and a good light; that upon such examination he found all the conditions safe for beginning work, except a shale or loose rock, which he marked; that he made a report of his examination before the men and the plaintiff were permitted to enter the mine to begin work on the said 6th day of December, 1898, the day of the injury; that he handed his report to the cager at the foot of the shaft in the said mine, who handed it to the mine manager; that afterward on the 6th day of December, 1898, and prior to the injury complained of, he recorded his report in a book kept for that purpose, which book was accessible to all persons interested; and that afterward, on the 6th day of December, 1898, and prior to the injury complained of, he again examined that part of the mine where the injury complained of occurred, and found no unsafe conditions therein.

That the defendant expects to prove by Jacob Maggs all it proved by him on the former trial of this case, the evidence of whom is preserved in the bill of exceptions in this

case and is still of record herein, and which evidence is referred to and made a part hereof.

That the defendant has and knows of no other witness by whom it can prove the foregoing matters; and that the defendant has reason to expect that there may be a conflict of testimony upon the said matters, etc.

That the defendant refers to and makes a part hereof the affidavit of P. F. McManaman filed herein on the 21st day of May, 1900.

That Jacob Maggs formerly resided at Westville in Vermilion county, but that on the 17th or 18th of May, 1900, he departed to some place unknown to the defendant and to the affiant.

That the agents and attorneys of the defendant have made diligent inquiry and search to find the present place of residence of the said Jacob Maggs, but have been unable to find the same. That the affiant, as one of the attorneys of the defendant, has personally seen the wife of the said Jacob Maggs, but failed to learn from her his present place of residence; and the attorneys of defendant have written the said wife, inquiring for the present place of residence of her husband, and have received her answer saying, "We have not yet heard from Mr. Maggs yet," which answer is attached (as "Exhibit No. 1"). That the said attorneys also wrote Peter W. Olroyd, at Westville, a personal friend of Jacob Maggs, inquiring for his present residence. His answer is attached (as "Exhibit No. 2"), saying: "I do not know where Mr. Jacob Maggs is at present time. I saw him in Virden, Ills., on Thursday last, and he told me he had got a position in Springfield."

That the said attorney also wrote to Charles V. Hickok, manager of the Springfield Coal Association, inquiring for Jacob Maggs, who referred the letter to the president of the Miners' Union. (Mr. Hickok's answer is Exhibit No. 3.)

That no intelligence had been received from the president of the Miners' Union (mentioned in Exhibit No. 3).

That on the 21st day of May, 1900, said attorney wrote to Jacob Maggs at Springfield, Illinois, inclosing for an answer an addressed and stamped envelope, but that the said letter was returned to them uncalled for on the 23d day of June, 1900. (See Exhibit No. 4.)

That on the 13th day of June, 1900—thirteen days before the case was called for trial—the defendant caused to be issued a subpoena in this case for Jacob Maggs, directed and sent to the sheriff of Sangamon county to serve, and

Kellyville Coal Co. v. Hill.

also a subpœna for him directed to the sheriff of Vermilion county to serve, but that the same and each of the said subpœnas have been returned by each of the said sheriffs indorsed, "The within Jacob Maggs not found in my county."

That the said Jacob Maggs has not returned to his home in Westville, Illinois, and that neither the defendant nor the affiant knows where Jacob Maggs now is or can be found.

That every reasonable effort has been made to procure the attendance as a witness of Jacob Maggs on the trial of this case, and also to locate him so that his deposition might be taken, but without success. That the defendant expects to procure the attendance of Jacob Maggs as a witness on the trial of this case at the next term of this court, or procure his deposition in this case at the said next term. That this application is not made for delay, but that justice may be done.

(Jurat.)

The affidavit of Patrick McManaman is substantially the same as the affidavit of G. M. McDowell with the additional: That the defendant has and knows of no other witness by whom it can so fully prove the above matters, and that it has reason to expect, and believes that there will be a conflict of testimony upon the matters in controversy and that the testimony of Jacob Maggs will be necessary for the defendant to make out its defense. That the defendant on the 15th day of May, 1900—six days before the first day of the May term—caused a subpœna for Jacob Maggs to be issued and placed in the hands of the sheriff of Vermilion county to serve, but that the said sheriff failed to serve the same.

That the defendant did not learn that Jacob Maggs could not be found until the 20th day of May, 1900, when it, by its agents and attorneys, made every possible effort to ascertain his whereabouts, but was unable to ascertain the same. That every effort possible has been made by the defendant, its agents and attorneys, to ascertain the whereabouts and address of Jacob Maggs; and that if further time is given, the place of residence of Jacob Maggs can be ascertained.

(Jurat.)

D. D. Evans and G. M. McDowell, attorneys for the appellant.

Previous to the commencement of the trial in the court

below, the appellant entered a motion, grounded upon affidavits, for a continuance, which was overruled by the court.

The provisions of the statute governing continuances in consequence of the absence of a material witness are, that the motion shall, be grounded on the affidavit of the party applying for the continuance, or his authorized agent, showing that due diligence has been used to obtain the testimony of the witness; what fact or facts the party applying for the continuance expects to prove by the absent witness; the place of residence of the witness, if known, and, if not known, that due diligence has been used to ascertain the same; and that if further time is given, his place of residence can be ascertained. Section 42, chapter 110, of the statute in regard to practice in courts of record. These provisions are substantially the same as they are in the Revised Statutes of 1845. R. S., 1845, Chap. 83, Sec. 13.

Appellant contends that every one of these provisions was complied with in this case.

The appellant is a corporation, and one of the affidavits for the continuance was made by one of its attorneys.

It is competent for an attorney of a party applying for the continuance, to make the affidavit upon which the cause for a continuance is grounded. Lockhart v. Wolf, 82 Ill. 37.

The other affidavit was made by an agent of the appellant and the manager of the mine where the accident occurred. This was competent under the statute in regard to practice in courts of record. R. S., Chap. 110, Sec. 42.

MABIN & CLARK, attorneys for appellee.

To justify the continuance of a cause by reason of the absence of a witness, something more than writing letters, and making inquiries as to his residence, etc., is required. Puterbaugh, Pl. & P., page 759; Stevenson v. Sherwood, 22 Ill. 238.

If a witness resides in another county than that in which the court is held, it must appear that his fees have been tendered or paid to him, before a party can have a continuance on the ground of his not appearing after being summoned. Puterbaugh, P. & P., page 760.

Kellyville Coal Co. v. Hill.

Continuance is properly refused when the affidavits in support of the motion do not show diligence to procure the attendance of the absent witness. St. L. & K. C. R. R. Co. v. Olive, 40 Ill. App. 82; Mantonya v. Huerter, 35 Ill. App. 28–29.

On a motion for a new trial based on the absence of witnesses who had been subpœnaed, the failure of the party calling them to show whether such witnesses absented themselves by his consent is sufficient ground for refusing a new trial. N. C. C. Ry. v. Gaska, 27 Ill. App. 516; affirmed, N. C. C. Ry. Co. v. Gaska, 128 Ill. 613.

OPINION PER CURIAM.

This case was before us at a former term, and we then reversed a judgment of the Circuit Court in favor of appellee and remanded it for a new trial on the ground that we were not satisfied from the evidence in the record, that it sufficiently appeared that appellant had willfully violated or willfully failed to observe the requirement of the miners act in the respect charged by appellee in his declaration. 87 Ill. App. 424.

The case having been again tried by jury, resulted in a verdict and judgment for appellee as before, and appellant brings it to this court again by appeal, and seeks to reverse the judgment last rendered upon the ground, among others, that the court improperly overruled its motion for a continuance.

The record discloses that when this case was called for trial on June 25, 1900, and before the same was commenced, appellant moved for a continuance, supporting same with an affidavit of one of its attorneys in charge of the case, but the court overruled the motion, and directed the trial to proceed, to which rulings appellant preserved an exception.

The affidavit is in all respects formal, and sets up as a reason why appellant can not then proceed with the trial, that one Jacob Maggs, a material witness for it, is absent; that it expects to prove by him that (here follow in detail,

facts which this court held to be a valid defense to the action when the case was before it on the prior appeal); that Jacob Maggs resided at Westville in Vermilion county, Illinois, but on May 17 or 18, 1900, he left there and went to Virden to visit some friends for a short time, and then expected to go to Springfield, Illinois, and get employment in a coal mine in that vicinity; that the agents and attorneys of appellant had, a short time after Maggs left home as aforesaid, inquired of his wife, who was still in Westville, where her husband then was, but she answered that she did not know, but would inform them as soon as she ascertained; that on June 13, 1900, his wife wrote to the said attorneys of appellant that " we have not heard from Mr. Maggs yet, but as soon as we hear from him, we will let you know." (Her letter being attached as as an exhibit.)

That on May 22, 1900, defendant's said attorneys, in response to an inquiry made by them to one P. W. Alvoyd, of Westville, Illinois, a personal friend of Maggs, received a letter from him informing them that he " does not know where Mr. Jacob Maggs is at the present time; I saw him in Virden, Illinois, on Thursday last and he told me he had got a position in Springfield. But he was visiting friends there, so I don't know whether he is in Springfield yet or Virden." (Attaching the letter as an exhibit.)

That said attorneys wrote to one Charles F. Hickox, manager of the Springfield Coal Association, at Springfield, Illinois, inquiring for Jacob Maggs, and he on June 13, 1900, answered he did not know where he was, but informed them that he had referred their letter of inquiry to the president of the Miners' Union of the Springfield district, with the request that he investigate and ascertain, if he could, and report to them, but that said attorneys had not yet received any information from that source of Maggs' whereabouts.

That said attorneys wrote to Jacob Maggs, May 21, 1900, addressing him at Springfield, Illinois (inclosing an addressed and stamped envelope for reply), in which they

requested him to answer them as to where he was, and that said letter was returned to them June 23, 1900, uncalled for. (The letter and envelope in which it was inclosed, etc., were attached as an exhibit.)

That appellant, on June 13, 1900, caused to be issued out of the Circuit Court of Vermilion County, a subpœna in this case for Jacob Maggs to attend the Circuit Court of said county, as a witness for appellant, on June 25, 1900, and also another subpœna of like tenor, date and effect, one of which was issued to the sheriff of said Vermilion county, and the other to the sheriff of Sangamon county, Illinois, to serve, both of which subpœnas have been returned by said sheriffs, respectively, not served, because said Jacob Maggs could not be found.

That Jacob Maggs has not yet returned to his home in Westville, and neither the agents nor said attorneys of appellant know where he is, but they expect to have him as a witness in this case at the next term of this court, or have his deposition; that appellant has no other witness by whom it can so fully prove the facts sought to be proven by Maggs, and that there will be a conflict in the evidence upon those facts in the trial of the case; and that this application is not made for delay, but that justice may be done.

It is contended by counsel for appellee that the affidavit is not sufficient, because it does not show that Maggs is not absent by the consent or procurement of appellant, nor does it show sufficient diligence.

But in that we can not concur, because the court knew that Maggs was a witness on the former trial of the case, and had then given material testimony for appellant; and it appearing by this affidavit that after it was discovered he was not at his home in Vermilion county, and the attorneys of appellant received information where he had gone and for what purpose, the efforts made by them to procure his attendance at the time the case was called for trial, as disclosed by the affidavit, were such as a reasonable person would make for the purpose of getting him subpœnaed in time for the trial on June 25, 1900; therefore the affidavit

did show proper diligence. As Maggs had not been present in court, and departed before he was called as a witness, it was not necessary that the affidavit should state that he was not absent by the consent or procurement of appellant, as it might have been had such been the case. North Chicago City Ry. Co. v. Gastka, 128 Ill. 613.

The affidavit, showing as it did the absence of a material witness; the facts expected to be shown by him (which were material); due diligence on the part of appellant to procure his attendance; its inability to show so fully those facts by any other witness; that the absent witness resided in Vermilion county and was only temporarily absent; that he had testified at a former trial and given important testimony in the case, and such absent witness could reasonably be expected to be produced, or his deposition taken if the case was continued to a future time, meets all the requirements of section 42, chapter 110, of our practice act, and therefore entitled appellant to have its motion to continue allowed. Adams v. Colton, 2 Scammon, 71.

Appellant is entitled to have a reasonable opportunity to procure important and material evidence in its behalf when the case is tried, and the court, upon the showing made, should have granted the continuance and committed prejudicial error against appellant by refusing to do so.

We will not discuss the other errors assigned in this case, because we deem it unnecessary, as the judgment must be reversed and the case remanded for another trial for the error indicated, and no benefit will likely be derived from our passing upon them.

For the error indicated, the judgment appealed from is reversed and the case remanded to the Circuit Court for a new trial. Reversed and remanded.