### Houston H. Hall, Appellee, v. Metropolitan Life Insurance Company, Appellant.

### Gen. No. 39,885.

Opinion filed December 30, 1938.

HOYNE, O'CONNOR & RUBINKAM, of Chicago, for appellant; NATHANIEL RUBINKAM, WILLIAM S. ALLEN, and JAMES O. BROOKS, all of Chicago, of counsel.

ZEDRICK T. BRADEN and GEORGE S. BARNES, both of Chicago, for appellee.

Mr. Presiding Justice Burke delivered the opinion of the court.

Plaintiff, a practicing attorney at the Chicago bar, sued in the municipal court of Chicago to enforce an attorney's lien and on a trial before the court without a jury judgment was rendered in favor of plaintiff for $100, to reverse which defendant prosecutes this appeal.

Grace Smith and Grundy Lewis had claims pending against defendant corporation. On February 8, 1937, Grace Smith, one of the claimants, retained plaintiff and signed a contract reading:

"This is to certify that I have this day employed Houston H. Hall as attorney to represent me in my claim against the Metropolitan Life Insurance Company, for certain claims due me on policies Re: my mother and sister. My attorney is to have and receive one-third of the amount collected as and for attorney's fees for service rendered in this case." Plaintiff testified that on the same day he went to defendant's branch office and delivered a letter to "a woman in charge of the second floor office at 45 East 47th Street. I don't know the lady's name. I talked to the lady"; that the lady was at the window and was accepting premiums and marking premium receipt books; that he gave her a copy of the letter and retained the original. The letter, also designated as a notice, despite objection of defendant, was received in evidence. It reads:

"February 8, 1937.

."Metropolitan Life Insurance Co.,
1 Madison Square,
New York City.

"Gentlemen:

"This will notify you that Mrs. Grace Smith of 5339 Wentworth Avenue, 2nd Apt., has employed me to

represent her in a certain claim against you for benefits due under and by virtue of the terms of Insurance policies insuring the life of one Alice Dubroca, her mother, and Anna Lewis, her sister, both parties have since died.

"She states that she has made several demands on you to pay same, but as yet the benefits have not been paid to her.

"This will further notify you that this case is being handled on a contingent fee basis and that I have in my possession a contract signed by the above mentioned party by the terms of which I am to receive as Attorney's fees a sum of money equal to one-third (⅓) of any and all sum or sums of money which may become due and payable to her in settlement of the above claim and I claim an Attorney's lien in accordance with the said contract above mentioned.

"Respectfully yours,
"Houston H. Hall"

Over the objection of defendant the following letter was also received in evidence:

"METROPOLITAN LIFE INSURANCE
COMPANY

"Frederick H. Ecker, Chairman of the Board
Leroy A. Lincoln, President
New York City

"Ind. Claim                                         February 15, 1937
"*In re*: DC 5511593 28901829 Alice Dubroca;
    12429236 22495721         Anna Dubrocz

"Houston H. Hall                          `                   219
Attorney at Law           .                                  290
3458 South State Street                                      ———
Chicago, Illinois                                            409
"Dear Sir

"Replying to your letter of February 8, permit us to inform you that we have already instructed our

local office at 6 East Garfield Boulevard, Second Floor, in charge of Alexander Roth to proceed in the settlement of this claim. However, we informed him that any settlement made had to include your client, Grace Smith. We, of course, are not going to pay your client individually. Claim was filed by Grundy Lewis and he is also to be included in the settlement. If your client and Grundy Lewis cannot reach an agreement, we will await the appointment of a legal representative of the estate.

"Yours truly<br>
"John B. Northrop [signed]"

The claims were being settled through the branch office at 6 East Garfield boulevard, Chicago. Defendant, through its manager at the Garfield boulevard office, made out and delivered two checks, dated February 12, 1937, payable to Grundy Lewis and Grace Smith, one in the sum of $219.74 and the other in the sum of $290.83, which checks were delivered and paid. It is conceded that Grace Smith received $300 in full satisfaction of her claim, and the trial court felt that plaintiff under his contract was entitled to $100. It will be observed that the notice was actually received by defendant corporation. Grace Smith, called as a witness by defendant, testified (*inter alia*) that she could read, and that plaintiff told her he would charge her one-third of whatever might be recovered. It was stipulated that if Grundy Lewis testified he would say that there was no dispute about payment of the claim, and likewise stipulated that if a Mr. Perlmutter appeared he would testify that he, as agent for defendant, delivered the check and at such time had no knowledge that plaintiff claimed an attorney's lien.

The first criticism leveled at the judgment is that the contract for a fee of one-third of the amount collected is unreasonable and unconscionable, and in support of its position defendant cites *Berkos v. Aetna*

*Life Ins. Co.,* 279 Ill. App. 243. There Berkos, an attorney, filed a petition for an attorney's lien in a case that arose out of two certificates issued to Candelario de la Rosa under a group life insurance policy, who became ill and died while his claim was pending, and his father was granted permission to intervene and filed an answer contesting the claim of Attorney Berkos. That case is not in point. The father of insured had a clear right to raise his voice in objection to the reasonableness of the fee sought. In the case before us the dispute is between the attorney and the corporation against which he asserts a lien. The client, Grace Smith, appeared only as a witness and did not challenge the claim of plaintiff for the enforcement of a lien against defendant. Defendant is not in a position to contend that the fee contracted for was unreasonable and unconscionable.

The chief point on which defendant relies to overturn the judgment is that ''service of notice on a corporation of an attorney's claim for lien must be personal and in accordance with the statute for the service of process on corporations. Service was not properly made by leaving a copy of the notice with an employee and there can be no recovery under an attorney's claim for lien unless the Act has been strictly complied with.'' Sec. 14, ch. 13, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 9.13], provides that an attorney claiming a lien shall serve notice in writing, which service may be made by registered mail, upon the party against whom the client may have a suit, claim or cause of action, and that such lien shall *attach from and after the time of service of such notice.* It is plain, therefore, that the lien is effective from the moment of service. The original Attorney's Lien Act adopted in 1909 did not contain the clause permitting service by registered mail, and the Supreme Court, in *Haj v. American Bottle Co.,* 261 Ill. 362,

held that service by registered mail was ineffective. Subsequently, and apparently because of the ruling of the Supreme Court in the *Haj* case, the act was amended so as to permit service by registered mail. The *Haj* case approves the statement in *Chicago & Alton R. Co. v. Smith,* 78 Ill. 96, 99, that "when a notice is required, and the mode of service is not specified, the law requires that it shall be personal." Hence, in the instant case it was incumbent on plaintiff to establish personal service of the notice of lien. In support of its contention that there was no personal service, defendant calls attention to sec. 157.111, ch. 32, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 32.114], that "service of process in any suit, action, or proceeding, or service of any notice or demand required or permitted by law to be served on a foreign corporation *may* be made on such corporation by service thereof on the registered agent of such corporation." (Italics ours.) Said section further provides that whenever a foreign corporation authorized to transact business in this State fails to appoint or maintain a registered agent upon whom service of process or notice *may* be had, then the Secretary of State is authorized to accept service for the corporation of any process or notice, and also contains the following significant language: "Nothing herein contained shall limit or affect the right to serve any process, notice, or demand required or permitted by law to be served upon a foreign corporation in any other manner now or hereafter permitted by law." Section 157.111, ch. 32, just quoted, should be read in conjunction with sec. 141, ch. 110. The latter section authorizes service of process on a corporation by leaving a copy thereof with any officer or agent of the corporation found in the county. When the two sections are considered together it is obvious that the act, in providing for service on a foreign corporation through a designated

agent or the Secretary of State, is permissive and not restrictive. A mere reading of the section demonstrates that such was the clear intention of the legislature. Therefore, a foreign corporation may be served in the same manner as a domestic corporation, and may also be served as provided in sec. 157.111, ch. 32. Defendant stresses the opinion of this court in *Mayer v. Yellow Cab Co.*, 247 Ill. App. 42. The opinion was filed in 1927, and the court, in considering whether there was valid service of an attorney's lien notice, was speaking at a time when the Practice Act of 1907 was in effect. Section 8 of the Practice Act of 1907 (Appendix to ch. 110, Smith-Hurd Ill. Anno. Stats., p. 816 [Jones Ill. Stats. Ann. 104.017 note]) stated that a corporation "may be served with process by leaving a copy thereof with its president, if he can be found in the county in which the suit is brought or in any county to which process is directed under the provisions of section 6 of this Act. If he shall not be found in the county or in the county to which process is directed then by leaving a copy of the process with any clerk, secretary, superintendent, general agent, cashier, principal, director, engineer, conductor, station agent, or any agent of said company found in the county in which such suit is brought or in any county to which process is directed . . ." We obtained and read the abstract and briefs in the *Mayer* case, *supra*. There was conflict in the testimony as to whether or not the notice was received. On March 19, 1925, the petitioners, being the attorneys asserting a claim for lien, prepared a notice, and Emil Schlan made oath that he served the notice "upon the Yellow Cab Co., a corporation, by leaving a copy of same with Beulah Schulman, a person over the age of 12 years, agent, then being on and in charge of the office of the said corporation on March 19, 1925, at 1:00 o'clock P. M." The court said (p. 47): "How-

ever, aside from all other questions, the attempted service of the lien notice did not constitute service as required by the statute. The service must be personal *and in accord with the statute providing for service of process upon corporations* and, without which, however meritorious the lawyer's claim for fees may be, there can be no recovery." (Italics ours.) This court, in the *Mayer* opinion, was, of course, discussing the statute in effect at that time, which required that service of process on a corporation be made by leaving a copy of the process with the president, if he could be found in the county, and that if he could not be found then by leaving a copy with any clerk, secretary, superintendent, general agent, cashier, principal, director, engineer, conductor, station agent, or any agent of the company found in the county. In that case there was no attempt made to establish that the president of the Yellow Cab Company could not be found in the county, and this court rightly decided that there was no personal service of the notice in the manner provided for the service of process on corporations. The Civil Practice Act went into effect on January 1, 1934, and superseded the Practice Act of 1907. The new act permits service of process by leaving a copy thereof with any officer or agent of defendant found in the county, and does not require that an effort be first made to serve the president.

From the above discussion it is patent that the notice was properly served. The lien attached from the time of service, and when defendant paid the claim to plaintiff's client it did so at its peril.

Hence, the judgment of the municipal court of Chicago should be and it is affirmed.

*Judgment affirmed.*

JOHN J. SULLIVAN and FRIEND, JJ., concur.