(No. 89-CC-1196–

JOHN WILLIAMS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 28, 1996.*
*Order filed May 7, 1997.*

JAMES PAUL COSTELLO (SHANNON M. HEILMAN, of counsel), for Claimant.

JIM RYAN, Attorney General (MICHAEL ROCKS, Assistant Attorney General, of counsel), for Respondent.

## OPINION

SOMMER, C.J.

This is a claim for damages for personal injuries allegedly caused by the negligence of the State.

This Claimant at the time of the incident complained of was an inmate at the Lincoln Correctional Center. On October 29, 1987, the Claimant was working on a food detail on the second floor of the multi-purpose building. He was told to carry three food pans down the stairs. One of the pans was 5 inches deep and 14 inches long, the other two were 2½ inches deep. The pans were stacked on top of one another. The Claimant could not see directly below where his feet were. The stairs were smooth concrete stairs with no slip-resistant materials applied to them. The Claimant was wearing prison issue shoes with plastic bottoms. The Claimant was told in no uncertain terms to hurry by the prison authorities present. Harry Beavers, a prison employee, had seen water on the top three stairs and had sent for a mop just before the Claimant used the stairs. The Claimant slipped on the stairs and fell to the bottom.

The Claimant was taken to the infirmary and kept over night. He had complaints of neck, head, and back

pain and a bruise on his buttocks. He returned to the infirmary a few days later and was kept there for a week. He later returned numerous times with complaints of back pain and numbness and pain down his left leg. He was sent to Lincoln Memorial Hospital for X-rays and a neurological examination. The neurologist's impression was S-1 radiculopathy, which is defined as any disease of the spinal nerves. *Schmidt's Attorney's Dictionary of Medicine*, 1995, Vol. 4, P. R-8.

The State does have a duty to provide a safe work place for its inmates. (*Reddock v. State* (1978), 32 Ill. Ct. Cl. 511.) We conclude that the State breached its duty in this instance, and that the Claimant's injuries were caused by the State's negligence. The Claimant was carrying pans such that he could not see directly in front of him. He was told to hurry. He had no choice. The steps had water on them. We have in the past found liability where inmates are required to walk through water. *Coley v. State* (1991), 44 Ill. Ct. Cl. 153; *Hammer v. State* (1987), 40 Ill. Ct. Cl. 173.

The institutional medical records show that the Claimant complained of back pain from the time of the injury through 1990. The Claimant testified at the trial that he continues to suffer from back pain and is unable to work.

"The burden of proof is on the plaintiff to prove by a preponderance of evidence not only that injuries exist but that they were the result of the occurrence of which he complains." *Bugariu v. Conley* (1981), 93 Ill. App. 3d 571, 417 N.E.2d 719.

The Claimant introduced no testimony as to his present condition other than his own.

"When the injury is remote in time from the accident or the condition is one shrouded in controversy as to origin, such as the intervention of either a prior or subsequent injury or disease layman testimony may be insufficient to establish a prima facie showing of a causal relationship." *Hyatt v. Cox* (1965), 57 Ill. App. 2d 293, 206 N.E.2d 260.

In the present claim, the Claimant is complaining of a traumatic injury but the neurologist's impression was one of disease.

"Medical testimony is not necessary to prove the causal connection where the condition is clearly apparent from the illness and circumstance attending it." *Jackson v. Narvik* (1976), 37 Ill. App. 3d 88-95, 346 N.E.2d 116-123.

In the present claim, the Claimant's current condition is not clearly apparent from the diagnosis given by a medical specialist near the time of the injury.

We find that the Claimant's testimony concerning his condition at the time of trial alone does not meet the burden of proof required of the Claimant to establish a *prima facie* case of causation or the existence of the injury. The injury was remote in time and the connection between the diagnosis of disease near the time of the injury and the claim of a permanent traumatic injury is not clearly apparent. The Claimant could have introduced expert medical testimony but did not do so.

The Claimant's medical expenses were paid by the State; however, he did undergo a certain amount of pain and suffering after his fall. We, therefore, award the Claimant $2,000 for pain and suffering in full and complete satisfaction of this claim.

## ORDER ON PETITION
## TO ADJUDICATE ATTORNEYS LIEN

SOMMER, C.J.

This cause returns on a petition filed by Claimant's counsel pursuant to the Attorneys Lien Act (770 ILCS 5/1), challenging a delinquent child support deduction made by the State Comptroller from Claimant's award.

On August 28, 1996, this Court issued its decision awarding Claimant $2,000. On September 25, 1996, the

comptroller notified Claimant that the entire amount had been consumed by past due child support in accordance with sections 10.05 and 10.05a of the State Comptroller Act. (15 ILCS 405/10.05 and 10.05a.) Those sections provide in pertinent part as follows:

"§10.05. Deductions from warrants and payments for account or claim in favor of State—Statement of reason. Whenever any person shall be entitled to a warrant or other payment from the treasury or other funds held by the State Treasurer, on any account, against whom there shall be any account or claim in favor of the State, then due and payable, the Comptroller, upon notification thereof, shall ascertain the amount due and payable to the State, as aforesaid, and draw a warrant on the treasury or on other funds held by the State Treasurer, stating the amount for which the party was entitled to a warrant or other payment, the amount deducted therefrom, and on what account, and directing the payment of the balance; which warrant or payment as so drawn shall be entered on the books of the Treasurer, and such balance only shall be paid."

"§10.05a. Deductions from warrants and payments for satisfaction of past due child support. At the direction of the Department of Public Aid, the Comptroller shall deduct from a warrant or other payment described in Section 10.05 of this Act, in accordance with the procedures provided therein, and pay over to the Department that amount certified as necessary to satisfy, in whole or in part, past due support owed by a person on account of support action being taken by the Department under Article X of The Illinois Public Aid Code, whether or not such support is owed to the State. Such deduction shall have priority over any garnishment except that for payment of state or federal taxes. In the case of joint payees, the Comptroller shall deduct and pay over to the Department the entire amount certified."

Claimant's counsel asserts entitlement to one-third of the award, $666.67, for contingent attorney fees plus an additional $946.88 in costs and expenses. Thus, Claimant's counsel contends that $1,613.55 of the $2,000 award is subject to an attorney's lien and is therefore immunized from seizure to pay Claimant's delinquent child support.

The Court notes that the contingent fee sought by Claimant's counsel exceeds the 20% limitation set forth in section 26—1 of the Court of Claims Act. (705 ILCS 505/26—1.) Accordingly, the court finds that counsel's purported lien would only be enforceable to the extent of

$1,346.88 ($400 contingent fee plus $946.88 in costs and expenses) assuming, *arguendo*, that a valid and enforceable lien exists.

On its face, section 10.05a of the State Comptroller Act plainly indicates that delinquent child support deductions can only be subordinated by garnishments for the payment of State or Federal taxes. No mention is made in section 10.05a of attorneys' liens or any other liens, for that matter, as being capable of taking priority over delinquent child support deductions. For its part, the Attorneys' Lien Act (770 ILCS 5/1) is silent on the question of priorities. Given the clear language of section 10.05a and the absence of any statutory provision which would give priority to an attorney's lien, we hold that a section 10.05a delinquent child support deduction takes priority over a claim under the Attorneys' Lien Act.

Alternatively, we find that Claimant's counsel has failed to prove that the purported attorney's lien here was ever perfected so as to actually attach to Claimant's award. Cases construing the Attorneys' Lien Act have routinely noted that the Act is a purely statutory creation which was unknown at common law and that, as such, the Act's provisions must be strictly followed in order for a valid and enforceable lien to come into existence. (See, e.g., *In re Kleckner*, 93 B.R. 143, 145 (N.D. Ill. 1988); *Unger v. Checker Taxi Co.* (1961), 30 Ill. App. 2d 238, 241, 174 N.E.2d 219, 221; and *Cazalet v. Cazalet* (1944), 322 Ill. App. 105 107, 54 N.E.2d 61, 63.) Under the Act, notice must be accomplished by either personal service or registered or certified mail:

"* * * To enforce such lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action." 770 ILCS 5/1.

The attorneys lien does not attach until actual service of the above notice has taken place. (*Cazalet*, 322 Ill. App. at 107, 54 N.E.2d at 63.) Here, Claimant's counsel has failed to prove that the statutory notice was *ever* properly served on Respondent, let alone prior to the Comptroller's September 25, 1996, notification concerning the delinquent child support. Thus, there never was a valid and enforceable attorney's lien.

It is therefore ordered that the petition to adjudicate filed herein by the law firm of James Paul Costello, Ltd. is denied.